UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENID M. RUBIO,

    Plaintiff,

v.                                         Case No. 8:11-cv-302-T-24TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-eight years of age at the time of her administrative hearing in December 2009. She stands five feet one inch tall and weighed 130 pounds according to her administrative filings. Plaintiff has an Associate's Degree in Liberal Arts. Her past relevant work was as an insurance clerk, claims supervisor, and receptionist. Plaintiff applied for disability benefits in September 2007, alleging disability as of March 28, 2007, by reason of neck and back pain, swelling, and numbness. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified that she is unable to work due to radiating pain along the whole left side of her body, low back pain, numbness in both hands, tremors, and difficulty sitting. When the pain affects her left leg, it causes her to lose her balance which is why she has started using a cane. Reaching and bending are difficult for her and cause her pain. She has more bad days than good, and on a bad day, she is rarely up. By her account, she needs to take three to four naps per day about four days a week and will do four to five treatments per day with the massage chair and heating pad. She testified that her pain level is so high on bad days that her "body totally shuts down."

Plaintiff last worked in March 2007. She worked for Amerigroup with whom she worked since 1993 and held various positions with the company from customer service to management. Plaintiff does not think she could do even clerical work in a low-stress environment on a part-time basis because of her hands and because she has more bad days than good.

As for daily activities, Plaintiff takes her medications with food upon waking. On bad days, she needs assistance with getting dressed and washing her hair. If she is having a good day, she will try to do some very light housework such as dusting and folding laundry. She may also do light gardening such as taking care of her orchids or baskets. She cannot vacuum, mop, mow the lawn, or do clipping. Her family does these things for her and also

helps her with the laundry and cooking. She cooks only about twice a week and always has someone in the kitchen with her in case she experiences a jolting pain. She is able to grocery shop provided someone else rides with her to the store. She does not drive alone any more because she gets disoriented and lost, especially when she has taken her medication. The muscle relaxers she takes make her dizzy and alter her depth perception which makes it difficult for her to drive. She avoids driving during rush hour or on the interstate. She drives five to seven times per week including for doctors' appointments and grocery shopping. She is not able to drive for longer than an hour at a time. She and her family have not taken a vacation in nine years because of that.

Plaintiff tries to walk an hour per day. On a good day, she is able to do this using her cane. However, on a bad day, she can only walk about thirty minutes inside the house, and then she will do her therapy, wait a couple hours, and then try to walk another thirty minutes. Walking and standing are both difficult for her, especially on bad days. She has equipment in her house for her therapy including a massage chair, body heating mat, floor body mat, overhead traction, a TENS unit, inversion table, brace for her back, braces for her hands, and a cane.

If Plaintiff takes her medication too late in the evening at nine o' clock or later, she has trouble getting to sleep. Her legs get very restless and they shake, tingle, and feel numb. Plaintiff has to wear a mask to bed because of sleep apnea. Her hands also get very numb and tingly, making it difficult to sleep. (R. 32-44).

The ALJ next called Jeffrey Carlile, a vocational expert (VE), to testify. Initially, the VE classified Plaintiff's past work as an insurance clerk as sedentary and skilled with an SVP of 5, the claims supervisor position as sedentary and skilled with an SVP of 7, and her work as a receptionist as sedentary and semiskilled with an SVP of 4. Next, the VE testified upon a hypothetical assuming an individual of Plaintiff's age, education, and work experience, capable of a limited range of light work with the ability to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; who can sit, stand or walk six to eight hours in an eight-hour day; with no climbing of ladders, scaffold or ropes, but occasionally climb stairs and ramps, as well as occasionally balance, stoop, crouch, kneel, and crawl; and fingering and feeling with left upper extremity limited to two-thirds of the day; and no work around dangerous moving machinery or unprotected heights. Upon this hypothetical, the VE opined that the individual could perform Plaintiff's past work. Similarly, if the hypothetical individual were limited to sedentary work; with no climbing, crouching, kneeling, crawling, or work around dangerous moving machinery or unprotected heights; occasional balancing and stooping such as bending at the waist to get out of a chair; and limited to frequent (two-thirds of the day) fingering and feeling with the left upper extremity, the Plaintiff's past work would still be available. With the added limitation of a sit/stand option such that the individual would need to alternate sitting and standing every thirty to sixty minutes as needed, the VE testified that these positions would still be available. However, if the individual could only stand one hour, walk one hour, and sit for four hours, this would preclude competitive employment on a full-time basis. At the conclusion of the hearing, the ALJ gave the Plaintiff

thirty days in which to provide her with the updated medical records including from the rheumatologist, the pulmonologist, and the anticipated upcoming psychiatric appointment. (R. 45-48).

By her decision of March 2, 2010, the ALJ determined that while Plaintiff has severe impairments related to mild cervical disc disease, mild lumbar disc disease, fibromyalgia, history of cholecystectomy in April 2005, history of remote thyroidectomy, and carpal tunnel syndrome, she nonetheless had the residual functional capacity to perform a limited range of sedentary work.[1] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as an insurance clerk, claims supervisor, and receptionist. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

A.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in failing to make a proper credibility finding as to the Claimant's testimony, and erred in improperly discounting the Claimant's complaints of pain and subjective symptoms;

(2) The ALJ erred in determining the Claimant's RFC; and

(3) The ALJ failed to accord substantial weight to the findings of the Claimant's treating medical sources. (Doc. 16).

By her first claim, Plaintiff urges that while the ALJ found medical impairments which reasonably could be expected to cause her pain and symptoms, she simply discredited the allegations of pain and symptoms without properly analyzing them, that is, she failed to examine the intensity, persistence or limiting effects of Plaintiff's pain or symptoms. Even if the ALJ gave reasons for discrediting her symptoms, the reasons given were not supported by substantial evidence. In support of her contention, Plaintiff urges that the evidence relied

7

upon by the ALJ in making such statements, "could not be substantial because all of the substantial evidence corroborates the allegations." (Doc. 16 at 4). She urges that no where does the ALJ point out instances in the medical record which contradict her claims.

In response, the Commissioner urges, after a review of the medical evidence, that Plaintiff has failed to prove functional limitations beyond those found by the ALJ. And, contrary to Plaintiff's contention, the decision reveals that the ALJ did consider the intensity, persistence and limiting effects of Plaintiff's symptoms and found from her treatment records, including the objective findings in those records, that such did not support Plaintiff's allegations of debilitating symptoms. The ALJ found Plaintiff's credibility further diminished based on her significant somatic exaggerations, such as her claim that her "body totally shuts down," which was unsupported by the medical record. Because the ALJ's credibility finding is supported by substantial evidence, the Commissioner urges the decision must be affirmed even if the court disagrees with the ALJ's resolution of the factual issues. (Doc. 17 at 10-11).

On her second claim, Plaintiff urges error in the ALJ's RFC determination. She claims vaguely that the RFC included no limitations "as established by the medical evidence of record and the medical opinions of her treating sources. . . .² This includes, but is not limited to, serious limitations with her upper extremities." (Doc. 16 at 5). Plaintiff argues broadly that numerous (unspecified) record cites support her difficulties in her upper extremities and yet the RFC included only a limitation for frequent feeling/fingering with her

---

²The unspecified limitations referred to on this claim come from assessments by Dr. Chiaramonte and Dr. Inga. These limitations and the ALJ's decision to discount certain of them are addressed on the third claim.

8

left upper extremity. In sum, she urges that her limitations were much more severe than found by the ALJ and a remand is in order.[3]

In support of this argument and on her final claim, Plaintiff urges that the ALJ failed to accord substantial weight to the opinions of her treating doctors, particularly, Dr. Chiaramonte and Dr. Inga. In an assessment completed by Dr. Chiaramonte, Plaintiff could not stand, sit, walk or lift at a level allowing for even sedentary work. Dr. Inga indicated that Plaintiff could not use her hands for repetitive action and was limited to only occasional bending, squatting, climbing and reaching above shoulder level. She urges that there is no objective evidence to refute the findings of these doctors and the evidence as a whole indicates that she is unable to sustain work activity. To the extent that the ALJ sought to discount these opinions, the ALJ failed to provide adequate reasons for doing so and instead chose to substitute her own opinions for those of the treating doctors. Thus, the ALJ should have afforded significant weight to the opinions of these treating doctors, especially where the opinions are consistent with the medical record as a whole. And had the ALJ properly credited the opinions, Plaintiff would have been found disabled.

The Commissioner responds that the ALJ properly assessed her RFC in light of the whole of the evidence and Plaintiff fails to demonstrate otherwise. Further, the ALJ was not obligated to include all of the limitations assessed by Drs. Chiaramonte and Inge, especially where there was no objective support for the limitations. As for Dr. Chiaramonte's limitations

---

[3]It is unclear whether the Plaintiff also complains that the ALJ failed to credit her with mental limitations. She cites quotations from two cases but such appear to relate to mental impairments and nothing more. (Doc. 16 at 6). As addressed below, such a presentation is wholly inadequate.

for sitting, standing, walking and lifting, the opinion was properly discounted as extreme in light of the medical record and thus properly discounted. As for Dr. Inga's opinion regarding Plaintiff's limited use of her hands, this opinion was directly contradicted by that of Dr. Chiaramonte as well as the objective record. As for Plaintiff's complaint that the ALJ failed to include a more severe limitation in her ability to use her upper extremities, the Plaintiff's MRI results and her conservative treatment support the ALJ's RFC finding on this point.[4] Thus, by the Commissioner's argument, the ALJ properly assessed the opinions of these treating doctors and the record as a whole in reaching the RFC assessment. Plaintiff does not demonstrate from that record limitations beyond that assessed by the ALJ. (Doc. 17 at 7-10).

B.

Because all Plaintiff's claims depend on the ALJ's evaluation of the opinion evidence from Drs. Chiaramonte and Inga, I address the last claim first. When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. The Commissioner "must specify what weight is given to treating physician's opinion

---

[4]Regarding Plaintiff's unspecified mental disorder, the Commissioner urges that Plaintiff fails to cite any record evidence supporting limitations from a mental disorder. On the contrary, Dr. Inga opined that Plaintiff did not have a mental impairment that significantly interfered with daily functioning. (R. 447). Additionally, the state agency consultant opined that Plaintiff did not have a medically determinable mental impairment. (R. 421).

10

and any reason for giving it no weight." The failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)(citing *Broughton v. Heckler*, 776 F.2d960, 961-62 (11th Cir.1985), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir.1982)); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Here, the medical record contains Physical Capacity Assessment forms completed by both Drs. Chiaramonte and Inga in November 2009. By Chiaramonte's assessment, Plaintiff can sit, stand and walk for only one hour in an eight-hour work day, but needs to alternate positions every 30 to 60 minutes. She can occasionally lift and carry five pounds. Additionally, she has certain occasional postural limitations and mild to moderate environmental limitations. She is capable of using her hands for repetitive action with only an occasional limitation in fine manipulation with the left hand. (R. 509-11). According to Inga, she is similarly limited in sitting, standing and walking, although there is no need for change of position. By his account, Plaintiff can occasionally lift up to ten pounds and she has some occasional postural and mild environmental limitations. However, by his assessment, Plaintiff cannot use her hands for repetitive action of any sort, nor can she use her feet for repetitive movements. (R. 519-21). If either assessment is fully credited, Plaintiff is incapable of even sedentary work.

11

At the outset, I note that the whole of Plaintiff's brief lacks the requisite specificity called for by the court's scheduling order. By that Order, Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged. Moreover, any such discrete challenges *must be supported by citation to the record of the pertinent facts* and by citations of the governing legal standards. Any contention for which these requirements are not met is subject to being disregarded for insufficient development. (Doc. 13 at 1-2). As discussed below, Plaintiff fails to provide adequate support from the record to merit any relief on any claim.

On this third claim, Plaintiff urges generally that the medical evidence supports her disability. Thus, she broadly claims the ALJ was presented with "a large record with numerous medical exhibits" which demonstrate her impairments and disabilities and she urges that there is no objective evidence that refutes the findings of two treating doctors. As for these treating doctors, she claims, without any reference to the record, that the ALJ failed to provide adequate reasons to discount either doctor's opinions. I have considered the whole of the medical record and conclude that the claim is without merit. More to the point, I find upon a review of the medical evidence from these and other sources that the ALJ gave fair and proper treatment to the opinions from these doctors and stated adequate reasons for discounting their physical capacity opinions.

First, it is apparent upon a fair reading of the decision that the ALJ adequately stated the weight given to the opinions from Drs. Chiaramonte and Inga. As the decision reflects, the opinion evidence from these doctors was credited in part and rejected in part. Thus, some portions of Dr. Chiaramonte's opinion, such as his assessment of Plaintiff's ability to use her

12

hands for repetitive actions, were credited by the ALJ while others, such as those related to sitting, standing walking, and lifting, were given little weight. Similarly, the decision reflects that the ALJ credited Dr. Inga's notations that Plaintiff evidenced good strength in the upper and lower extremities, gave great weight to his opinion that she had no sensory deficits, and little if any weight to the opinion that Plaintiff could not use her hands for repetitive actions such as grasping, pushing/pulling and fine manipulation. By implication, he also rejected this doctor's limitations related to sitting, standing, and walking. (R. 19-20). Even if the ALJ could have been more specific regarding Dr. Inga, the decision adequately reveals the weight given to each treating physician's opinion and, as discussed below, the reason for giving it little or no weight.

Insofar as Plaintiff suggests the ALJ did not give the objective record a fair reading and evaluation, the claim is without merit. Indeed, the decision reflects that the ALJ relied quite heavily on the objective evidence for her conclusion that Plaintiff had the residual functional capacity (RFC) for sedentary work and was therefore not disabled and as a ground for discounting the assessments of both Drs. Chiaramonte and Inga. As the ALJ noted after reviewing the objective and clinical record and the assessments, "[t]he above assessments are not accompanied by an objective evaluation or examination report or by objective findings that would support them. The objective findings shown on radiographic studies and on physical examination of record do not account for the extreme limitations alleged by the claimant and indicated on these questionnaires. . . ." (R. 20). As for Plaintiff's claim that the objective record fails to refute the opinions from these doctors and that the medical evidence as a whole supports their opinions, the record suggests otherwise.

13

A review of the objective and clinical records supports that the ALJ could properly conclude that such did not reveal the degree of impairments to support the disabling limitations for sitting, standing, walking and lifting assessed by either doctor. Indeed, the objective record dating back to years prior to Plaintiff's alleged onset date suggested only mild impairments in her cervical spine with little change over the years. *See* (R. 221, 223, 281, 286, and 288).[5] And, the MRI of the lumbar spine in November 2006 was wholly unremarkable. (R. 287). The cervical and lumbar MRIs in March 2007 showed little change. (R. 289-93). As the ALJ also noted, clinical notes from Dr. Inga suggested Plaintiff had good strength in all extremities and no sensory deficits. Dr. Chiaramonte found Plaintiff capable of repetitive use of her hands. Both treated Plaintiff conservatively. Records from other sources, including hospital records, do not suggest or reveal disabling impairments. In short, contrary to her blanket assertion otherwise, the objective and clinical record did not support Plaintiff's claims of disabling impairments.

Under the applicable standard, the ALJ may discount an opinion from treating doctors where the opinion is not bolstered by the evidence or the evidence supports a contrary finding, or where the treating source's opinion is conclusory or inconsistent with his own or other's records. Here, some of the opinion evidence was accepted by the ALJ while others were deemed extreme and implausible. Contrary to Plaintiff's bald assertion that the opinions were not adequately discounted, the decision reflects that the opinions were discounted

---

[5]These studies revealed no herniations, stenosis, or cord involvement but some disc bulge at C4 through C7.

because of a lack of objective and clinical support in the medical record and because the record revealed inconsistent findings on Plaintiff's ability to lift and use her hands. By my review, the stated reasons for discounting the opinion testimony are supported by substantial evidence and Plaintiff makes no effort, much less any showing, to demonstrate otherwise.

By my review of Plaintiff's first claim, she makes a 'boilerplate" argument that the ALJ gave only a " boilerplate statement" of reasons for discounting her pain complaints. In short, she offers no evidentiary support to show that the reasons stated by the ALJ for discounting her pain complaints were in error or otherwise unsupported.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Here, the decision reflects the ALJ's understanding and application of this standard. (R. 18- 20). By her assessment, Plaintiff's impairments could reasonably be expected to cause her alleged symptoms but her statements as to intensity, persistence and the limiting effects of the symptoms were not credible to the extent that she could not do a limited range of sedentary work. This statement is followed by and necessarily read in the light of the ALJ's review of the medical record. Here, the ALJ noted the history of pain complaints even before her alleged onset date (R. 19); the history of MRI studies *id.;* an ER record from Brandon Regional Hospital on Plaintiff's alleged onset date where she complained of neck and back pain and left-sided numbness and where the physical examination was essentially normal and she was sent home (R. 19, 296-99); treatment notes from Dr. Inga reflecting good strength in all extremities, no sensory deficits and conservative care (R. 19, 400); and Dr. Chiaramonte's findings which were inconsistent with her hand complaints. (R. 19, 509). Additionally, the ALJ noted Plaintiff's somatic exaggerations, such as her claim that her body totally shuts down, which were not supported anywhere in the medical record. (R. 20). These are not mere boilerplate statements when the medical evidence is considered and Plaintiff's bald assertion that the "[t]he evidence the ALJ relies upon to make these statements could not be substantial because all of the substantial evidence corroborates the allegations," is neither demonstrated nor substantiated upon my review of the record. Again, Plaintiff makes no showing that the ALJ failed to properly assess her pain complaints and adequately and explicitly discount them as overstated on the basis of the medical record. Plaintiff is not entitled to relief on this claim.

Finally, and for similar reasons, Plaintiff's unsubstantiated claim that the ALJ erred in determining her RFC is also without merit. Initially, this claim fails for a complete lack of

factual development. Apart from a general reference to limitations imposed by her treating doctors, the only limitation identified by the Plaintiff as not properly considered is said to be her "serious limitations with her upper extremities." (Doc. 16 at 5).[6] While urging that it is clear that the limitations in her upper extremities were severe, she fails to identify those limitations or cite to any medical support for the same. In any event, as I have recounted above, MRI evidence suggested only mild impairments in the cervical spine and nothing regarding the lumbar spine. Dr. Inga himself noted that Plaintiff had good strength in all extremities and suffered no sensory deficits and further that she could occasionally lift and carry up to ten pounds. Dr. Chiaramonte imposed no limitations for use of the hands for grasping or for pushing/pulling and only an occasional limitation for fine manipulation with the left hand. Once again, the Plaintiff wholly fails to demonstrate from the medical evidence that she suffers additional limitations not properly assessed by the ALJ. She is not entitled to relief on this claim either.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further

---

[6] Again, I note that Plaintiff makes an oblique reference to cases addressing mental impairments. It is not at all clear to me that she claims limitations in connection with a mental impairment, but if she does, the claim is completely without merit. As the Commissioner notes, there is no record support for a severe mental impairment and Plaintiff again wholly fails to identify any limitation supported by any medical report that should have been included in the RFC.

17

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
28th day of November 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Susan C. Bucklew, United States District Judge
Counsel of Record